1

2

3

4

5

6

7

8

9      **UNITED STATES DISTRICT COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA**

11      **SAN FRANCISCO DIVISION**

12

13   ALICIA G. SKINNER,                              Case No. 13-cv-00704 NC

14                          Plaintiff,               **ORDER GRANTING IN PART
                                                    DEFENDANTS' MOTION TO**
                    v.                              **DISMISS SKINNER'S COMPLAINT**
15                                                  **WITH LEAVE TO AMEND**

16   MOUNTAIN LION ACQUISITIONS, INC.,
     a California corporation; JUDITH EAST,          Re: Dkt. Nos. 35, 47
17   individually and in her individual capacity; D.
     SCOTT CARRUTHERS, A
18   PROFESSIONAL LAW CORPORATION, a
     California corporation; and DENNIS SCOTT
19   CARRUTHERS, individually and in his
     official capacity,
20
                            Defendants.
21

22

23          In this action arising out of defendants' attempts to collect plaintiff Alicia Skinner's

24   debt defendants move to dismiss the complaint under Federal Rule of Civil Procedure

25   12(b)(6).  The issue before the Court is whether the sale of Skinner's debt to defendants

26   violated California Finance Code § 22340 and thus made the debt void and unenforceable

27   under the California Finance Lenders Law.  Given that § 22340 does not prohibit any

28   conduct and applies only to real estate backed loans, Skinner's attempt to state a claim

under the Fair Debt Collection Practices Act predicated entirely on defendants' alleged violation of § 22340 fails. For the reasons set forth below, defendants' motion is GRANTED IN PART with leave to amend.

# I. BACKGROUND

## A.   Skinner's Allegations

On July 13, 2006, Alicia Skinner obtained a loan from CashCall "primarily for personal, family or household purposes." Dkt. No. 1 at ¶ 16. CashCall later sold Skinner's debt to defendant Mountain Lion Acquisitions, a debt collector. *Id.* at ¶¶ 11, 20. On February 23, 2012, Mountain Lion filed a lawsuit in Contra Costa County Superior Court, seeking to collect on Skinner's debt. *Id.* at ¶ 21. On January 11, 2013, Mountain Lion "unilaterally dismissed the *Mountain Lion v. Skinner* complaint when the case was called for trial." *Id.* at ¶ 37.

The current action was initiated when Skinner filed a complaint against Mountain Lion, Judith East, an employee of Mountain Lion, D. Scott Carruthers, a Professional Law Corporation in the business of debt collection ("Carruthers Law Office"), and Dennis Scott Carruthers, attorney and director of Carruthers Law Office. Dkt. No. 1. Skinner alleges four causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (2) common law malicious prosecution; (3) declaratory relief under the California Finance Lenders Law ("CFLL"), California Financial Code § 22000, *et seq.*; and (4) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788, *et seq. Id.* at ¶¶ 39, 50, 64, 80. Skinner alleges each claim against all defendants, with the exception of Carruthers, who is not named as a defendant on the RFDCPA claim. *Id.* at ¶¶ 11-14, 39, 50, 64, 80.

## B.   Procedural History

On February 19, 2013, Skinner filed her complaint. Dkt. No. 1. On April 9, 2013, defendants filed an answer to Skinner's complaint. Dkt. No. 11. On July 5, 2013, defendants moved to dismiss the FDCPA claim for failure to state a claim under Rule 12(b)(6). Dkt. No. 35 at 3-4. Defendants also requested that the Court decline to

1  exercise supplemental jurisdiction over the state law claims and dismiss them without

2  prejudice.  *Id.*

3       After defendants' motion to dismiss was fully briefed and taken under submission,

4  Skinner moved for leave to amend her complaint on January 20, 2014.  Dkt. No. 60 at 1.

5  Skinner seeks leave to add claims for violations of 15 U.S.C. §§ 1692d and 1692e, based on

6  recently discovered information that defendants allegedly used a forged declaration in

7  attempting to collect her debt.  *Id.* at 2.  Skinner also seeks to withdraw her claims for

8  declaratory relief under the CFLL, violation of the RFDCPA, and malicious prosecution.

9  *Id.*

10       The Court has jurisdiction under 28 U.S.C. § 1331, as Skinner alleges violations of

11  15 U.S.C. §§ 1692e and 1692f.  Dkt. No. 1 at ¶¶ 6, 47.  The Court has supplemental

12  jurisdiction over the state law claims under 28 U.S.C. § 1367.  *Id.* at ¶ 6.  All parties have

13  consented to the jurisdiction of a United States magistrate judge under 28 U.S.C. § 636(c).

14  Dkt. No. 13.

15                        **II. STANDARD OF REVIEW**

16       Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6), after

17  answering the complaint.  Accordingly, the Court will construe their motion as one for

18  judgment on the pleadings pursuant to Rule 12(c).  Rule 12(c) permits a party to move for

19  judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay

20  trial."  Fed. R. Civ. P. 12(c).  The main difference between motions filed under Rule 12(b)

21  and Rule 12(c) is the time of filing.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188,

22  1192 (9th Cir. 1989).  Because Rule 12(b) and Rule 12(c) motions are "functionally

23  identical," the standard of review is the same.  *Id.*  On a motion for judgment on the

24  pleadings, all material allegations in the complaint are taken as true and construed in the

25  light most favorable to the non-movant.  *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810

26  (9th Cir. 1988).  A court may grant a motion for judgment on the pleadings when the

27  movant clearly establishes that no material issues of fact remain to be resolved, and it is

28  entitled to judgment as a matter of law.  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480,

1  1482 (9th Cir. 1984).  If a court grants a motion for judgment on the pleadings, leave to

2  amend should be granted unless "the Court is satisfied that an amendment could not cure the

3  deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

4                                                **III. DISCUSSION**

5  **A.   Skinner Fails To State a Claim Under the FDCPA.**

6          Defendants initially moved to dismiss Skinner's FDCPA claim on the basis that debt

7  collectors do not need to be licensed and, even if they did, courts do not recognize technical

8  failures to comply with licensing statutes as actionable under the FDCPA.  Dkt. No. 35 at 4-

9  7.  Skinner responded by clarifying that the "gravamen of [her] Complaint is that

10 Defendants attempted to collect a void and noncollectable debt, by, *inter alia*, filing a state

11 court collection lawsuit against [her]."  Dkt. No. 38 at 1.  Specifically, Skinner alleges that:

12 (1) § 22340(a) of the CFLL was violated by the transfer of her debt to Mountain Lion

13 because it is not an "institutional investor" within the meaning of that section; (2) this

14 willful violation made the debt void and unenforceable under § 22750(b) of the CFLL; and

15 (3) defendants therefore violated the FDCPA by attempting to collect a debt that they knew

16 could not lawfully be collected.  Dkt. No. 38 at 24-25, 29.  In response, defendants argue

17 that Skinner misinterprets the plain language of § 22340, which is permissive, misapplies

18 the canons of statutory construction to this section, and fails to support her contention that

19 the Legislature intended to limit the entities to which a licensee can sell promissory notes.

20 Dkt. No. 44 at 4-5.

21         The issue before the Court is whether Skinner has stated a claim under the FDCPA

22 based on the alleged violation of § 22340 of the CFLL.  The FDCPA prohibits a debt

23 collector from using false, deceptive, and misleading representations or unfair and

24 unconscionable means in an attempt to collect a debt.  15 U.S.C. §§ 1692e, 1692f.  Section

25 1692e prohibits, in relevant part:

26          (2) The false representation of--
             (A) the character, amount, or *legal status* of any debt; or
27          (B) any services rendered or compensation which may be *lawfully* received by
             any debt collector for the collection of a debt. . . .

28

1    (5) The threat to take any action that *cannot legally be taken* or that is not
     intended to be taken. . . .
2    (10) The use of any false representation or deceptive means to collect or
     attempt to collect any debt or to obtain information concerning a consumer.

3    *Id.* § 1692e (emphasis added).  In addition, § 1692f prohibits "[t]he collection of any

4    amount (including any interest, fee, charge, or expense incidental to the principal

5    obligation) unless such amount is expressly authorized by the agreement creating the debt or

6    permitted by law."  *Id.* § 1692f.

7        Section 22340 of the CFLL provides, in relevant part:

8        (a) A licensee *may* sell promissory notes evidencing the obligation to repay
         loans made by the licensee pursuant to this division or evidencing the
9        obligation to repay loans purchased from and made by another licensee
         pursuant to this division *to institutional investors*, and may make agreements
10       with institutional investors for the collection of payments or the performance
         of services with respect to those notes.
11

12   Cal. Fin. Code § 22340 (emphasis added).  Subsection (b) of § 22340 proceeds to define

13   "institutional investors" as a list of specified entities.  *Id.* § 22340(b).

14       Section 22750(b) of the CFLL provides that "[i]f any provision of this division is

15   willfully violated in the making or collection of a loan, . . . the contract of loan is void, and

16   no person has any right to collect any principal, charges, or recompense in connection with

17   the transaction."  *Id.* § 22750(b).

18       Skinner argues that, although § 22340(a) states that licensees "may" sell promissory

19   notes to institutional investors, the statute actually means that licensees "may only" sell to

20   institutional investors as defined in that section.  Dkt. No. 38 at 25-26.  Under this

21   interpretation, Skinner asserts that "licensee" CashCall violated § 22340(a) by selling her

22   debt to Mountain Lion, which is not an "institutional investor" as listed in the statute.  Dkt.

23   No. 1 at ¶¶ 17, 27-28.  Skinner contends that this sale was a willful violation of the CFLL

24   "in the making or collection of a loan," thus making the loan contract void under

25   § 22750(b).  *Id.* at ¶¶ 30-31.  Skinner reasons that, because the debt was void, defendants

26   could not represent to Skinner that the debt was lawfully collectible.  *Id.* at ¶¶ 47, 75.

27   Therefore, Skinner argues, defendants violated the FDCPA by filing a lawsuit to collect a

28   debt that could not lawfully be collected.  *Id.* at ¶ 47f.  Based on this theory, Skinner also

1  alleges that defendants violated the FDCPA by "attempt[ing] to collect interest, fees, or
2  other charges that were not expressly authorized by the contract creating the debt or
3  otherwise permitted by law, in violation of 15 U.S.C. § 1692f(1)." *Id.*

4     In order to determine whether Skinner has stated a claim for relief under the FDCPA,
5  the Court must decide whether the sale of Skinner's debt violated § 22340 and thus made
6  the debt void under § 22750 of the CFLL. "When a decision turns upon applicable state
7  law, and the state's highest court has not adjudicated the issue, the district court must make
8  a reasonable determination . . . as to the result that the highest state court would reach if it
9  were deciding the case." *Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir. 1985).

10    The California Supreme Court has stated that "[t]he fundamental purpose of statutory
11 construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the
12 law." *People v. Pieters*, 52 Cal. 3d 894, 898 (1991). To determine the Legislature's intent,
13 the California Supreme Court starts by considering the statute's plain language. *Tarrant*
14 *Bell Prop., LLC v. Superior Court*, 51 Cal. 4th 538, 542 (2011). Here, § 22340(a) provides
15 that licensees "*may* sell promissory notes . . . to institutional investors." Cal. Fin. Code §
16 22340(a) (emphasis added). "It is a well-settled principle of statutory construction that the
17 word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as
18 mandatory, particularly when both terms are used in the same statute." *Common Cause v.*
19 *Bd. of Supervisors*, 49 Cal. 3d 432, 443 (1989). When a statute uses "may" and "shall" in
20 close proximity, the Court may properly infer that the Legislature intended permissive and
21 mandatory meanings, respectively. *Tarrant*, 51 Cal. 4th at 542. As the California Supreme
22 Court has noted, however, "in determining whether the Legislature intended a statute to be
23 mandatory or permissive, use in the statute of 'may' or 'shall' is merely indicative, not
24 dispositive or conclusive." *Id.* Thus, the Court may consider other indications of legislative
25 intent, including legislative history. *Id.*

26    The plain language of § 22340 does not support Skinner's interpretation of "may" as
27 "may only." In addition to the general principle that "may" is ordinarily construed as
28 permissive, both "may" and "shall" are used in close proximity within § 22340: "may" is

used in subsection (a) and (b), and "shall" is used in subsection (c).  Cal. Fin. Code § 22340.

Furthermore, the California Financial Code specifically states that "'[s]hall' is mandatory

and 'may' is permissive."  *Id.* § 15.  Thus, the plain language of § 22340 merely authorizes

licensees to sell loans to institutional investors as defined in that section.

The legislative history further supports this interpretation.  Although the CFLL, in

general, regulates many types of loans, the Court's analysis is focused on § 22340.  The

legislative history shows that § 22340 was enacted to authorize finance lenders to sell loans

secured by real estate to institutional investors without having to obtain a real estate

broker's license.  Prior to the enactment of § 22340, it was unclear whether someone

holding only a finance lenders license had the authority to sell real estate backed loans.

A.B. 346, 1985 Cal. S. Rules Comm., Ch. 187 (June 6, 1985) ("Currently, the laws under

which . . . finance lenders are licensed are silent with regard to their authority to sell

promissory notes to institutional investors and provide services with respect to those notes.

As a consequence, these licensees must obtain a real estate broker's license in addition to

their lender's license.").  Because of this uncertainty, the Legislature proposed a bill[1] that

would give finance lenders the express authority to sell real estate backed loans.  *Id.*

("[Section 22340] would provide explicit authority for these licensees to sell notes held by

them to specified sophisticated investors."); Letter from Assemb. Charles Calderon to

Governor George Deukmejian, July 2, 1985 ("Calderon Letter") ("[Section 22340] now

before you for signature, authorizes finance companies (personal property brokers,

consumer finance lenders and commercial finance lenders) to sell real estate loans they have

made to specified classes of institutional investors and to make agreements to service those

loans.").  The bill that ultimately became § 22340 provided that licensed finance lenders

selling loans secured by real estate would be exempted from the Real Estate Law's

requirement that they also have a broker's license.  Calderon Letter ("In accordance with the

finance companies' exemption from the Real Estate Law, this authority eliminates the

---

[1] Assembly Bill 346 was passed in 1985 and became § 22476 of the California Finance Code.  Cal.
Dep't of Corps., Enrolled B. Rep. of A.B. 3115, Sept. 3, 1996.  In 1994, § 22476 was renumbered
to § 22340.  Cal. B. Analysis, A.B. 1293, Assem. Comm., April 24, 1995.

Case No. 13-cv-00704 NC
ORDER GRANTING IN PART                          7
DEFENDANTS' MOTION TO DISMISS

1    possibility that they could be required to be licensed and regulated as real estate brokers

2    when selling or servicing real estate loans they have made.").  Thus, § 22340 was intended

3    to address licensing and avoid dual licensing under Real Estate Law.  Cal. Dep't of Corps.,

4    Enrolled B. Rep. of A.B. 3115, Sept. 3, 1996 ("Under the Real Estate Law ('REL'), persons

5    engaged in the business of selling and servicing promissory notes secured by real property

6    are required to be licensed as a real estate broker. . . . The CFLL provides an exemption

7    from the licensure requirements of the REL . . . for a finance lender that sells promissory

8    notes made by (or purchased from) another finance lender if the notes are sold to an

9    institutional investor, as defined.").[2]

10       In 1994, the Legislature consolidated the Personal Property Brokers Law, the

11   Consumer Finance Lenders Law, and the Commercial Finance Lenders Law, into one

12   California Finance Lenders Law.  A.B. 2885, 1994 Cal. Legis. Serv., Ch. 1115 (Cal. 1994).

13   Despite the consolidation and § 22340's various amendments, its purpose to authorize a

14   finance lender licensee to sell promissory notes secured by real property remained the same.

15   Cal. B. Analysis, A.B. 2885, Assem. Comm., April 19, 1994 ("This bill would obviate the

16   need for these different licenses and would eliminate the costly and duplicative regulatory

17   burden on these institutions and the administrative burden on the Department of

18   Corporations."); Cal. B. Analysis, A.B. 1293, Assem. Comm., April 24, 1995 ("[Section

19   22340] authorizes a CFL [(consumer finance lender)] to sell promissory notes secured by

20   real property only to 'institutional investors' defined as governmental entities, banks,

21   corporations and other entities deemed to be sophisticated investors."); Cal. B. Analysis,

22   A.B. 3115, Assem. Comm., May 6, 1996 ("[Section 22340] [a]uthorizes licensed consumer

23   finance lenders to sell promissory notes secured by real property to institutional investors . .

24   . .").

25       Neither party has cited to any California case law, nor has the Court been able to find

26   any California case law, addressing the issue of whether the sale of debt to a non-

27

28   [2] The legislative materials cited in this paragraph may be found on file at the California State
Archives, Governor's Chapter Bill File, Ch. 187 (1985) and Ch. 672 (1996).

institutional investor violates § 22340 and makes the debt void and unenforceable under the CFLL.  The only court that has addressed this issue has interpreted § 22340 as giving licensees under the CFLL express authority to sell loans secured by real estate without a real estate broker's license.  *See Le v. Sunlan Corp.*, No. 13-cv-00707 CRB, 2013 WL 5701393, at *4 (N.D. Cal. Oct. 18, 2013); *Braden v. BH Fin. Services, Inc.*, No. 13-cv-02287 CRB, 2013 WL 5913794, at *4 (N.D. Cal. Oct. 31, 2013).[3]

As in this case, the plaintiff in *Le* obtained a loan from CashCall.  *Le*, 2013 WL 5701393, at *1.  CashCall sold Le's debt to a third party, who assigned the debt to its affiliate.  *Id.*  The affiliate filed a state court action against Le in attempt to collect the debt.  *Id.*  After the state court action was voluntarily dismissed, Le brought claims under the FDCPA, RFDCPA, and CFLL and a malicious prosecution claim.  *Id.*  Defendants moved to strike plaintiff's RFDCPA and malicious prosecution claims under California's anti-SLAPP statute.  *Id.*

In granting the motion to strike, the Court found that § 22340 did not apply to the type of debt or conduct at issue, relying in part on the legislative history of the section.  *Id.* at *3.  The Court noted that § 22340 was specifically passed to permit finance lenders to sell real estate backed loans to institutional investors without the need for a real estate broker's license.  *Id.* at *4.  The Court also noted that California Code of Regulations § 1460 similarly indicates that § 22340 only applies to real estate backed loans because it is entitled "Real Estate Secured Loans: Sale to Institutional Investors," and describes § 22340 loans as being secured by deeds of trust.  *Id.*  The Court found that Le could not show a reasonable probability of prevailing on her RFDCPA claim because it hinged on defendants' violation of § 22340.  *Id.*

While not binding on this Court, the decision in *Le* is persuasive.  This Court similarly concludes that the Legislature enacted § 22340 to specifically authorize finance lenders to sell real estate backed loans to institutional investors without having to obtain a

---

[3] These opinions were issued after the parties filed their briefs in the present case.  The same counsel who represents Skinner in this case also represents the plaintiffs in *Le* and *Braden*.

1  real estate broker's license.  Section 22340 does not expressly prohibit any conduct.  Thus,

2  neither the plain language of § 22340, nor its legislative history, support Skinner's

3  interpretation that the sale of a loan not secured by real estate to someone other than an

4  "institutional investor" violates § 22340 and constitutes a "willful violation" voiding the

5  loan under § 22750(b)[4].  Because Skinner's FDCPA claim is based entirely on defendants'

6  alleged violation of § 22340, Dkt. No. 1 at ¶¶ 31, 47, she has failed to state a claim for relief

7  under the FDCPA.[5]  However, as it is not clear to the Court that Skinner could not amend

8  her complaint to state a claim for relief under the FDCPA, the Court will permit leave to

9  amend.

10  **B.  Defendants' Request that the Court Decline To Exercise Supplemental
     Jurisdiction over Skinner's State law Claims Is Denied.**

11

12      The only federal law claim alleged by Skinner is under the FDCPA.  Defendants ask

13  that, if the Court dismisses the FDCPA claim with prejudice, the Court decline to exercise

14  supplemental jurisdiction over the remaining state law claims and dismiss them without

15  prejudice.  Dkt. No. 35 at 3-4.  It appears from the complaint that the RFDCPA, CFLL, and

16  malicious prosecution claims are also based solely on defendants' alleged violation of

17  § 22340.  Dkt. No. 1 at ¶¶ 47f, 57f, 76, 81.  However, given (1) the Court's ruling

18  dismissing the FDCPA claim with leave to amend; and (2) Skinner's request to withdraw

19  her state law claims, Dkt. No. 60 at 2, which the Court does not resolve here, the Court

20  denies defendants' request that the Court decline to exercise supplemental jurisdiction over

21  the state law claims at this time.

22                              **IV. CONCLUSION**

23      Defendants' motion to dismiss, which the Court construes as a motion for judgment

24  on the pleadings, is GRANTED IN PART.  The Court dismisses the FDCPA claim with

25
_____
26  [4] Section 22750(b) states that if the CFLL is "willfully violated in the *making* or *collection* of a loan
    . . . the contract of loan is void."  Cal. Fin. Code § 22750(b) (emphasis added).

27  [5] Although Skinner recently moved to amend her complaint, Dkt. No. 60, it is unclear whether she
    intends to abandon her theory that defendants' alleged CFLL violations made their debt collection
28  attempts a violation of the FDCPA.

Case No. 13-cv-00704 NC
ORDER GRANTING IN PART                    10
DEFENDANTS' MOTION TO DISMISS

leave to amend.  The Court denies defendants' request that the Court decline to exercise supplemental jurisdiction over Skinner's state law claims at this time.  Any amended complaint must be filed within twenty-eight days from the date of this order.  If Skinner fails to file an amended complaint, or files an amended complaint that does not cure the deficiencies identified in this order, the Court will dismiss the FDCPA claim with prejudice.

IT IS SO ORDERED.

Date: January 28, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 13-cv-00704 NC
ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS

11