1  D. Scott Carruthers, State Bar No. 68745
   Attorney at Law
2  8448 Katella Avenue
   Post Office Box 228
3  Stanton, California 90680
   Telephone No.: (714) 761-3976
4  Facsimile No.: (714) 761-1754
   Email address: dsclawoff@aol.com
5
   Attorney for defendants Mountain Lion Acquisitions,
6  Inc.; D. Scott Carruthers, a Professional Law
   Corporation; Dennis Scott Carruthers; and Judith East
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO/OAKLAND DIVISION

11 ALICIA G. SKINNER,                    ) Case No.: 3:13-cv-0704-NC
                                         )
12              Plaintiff,               ) **AMENDED** NOTICE OF MOTION AND
                                         ) MOTION FOR JUDGMENT ON THE
13 vs.                                   ) PLEADINGS AGAINST PLAINTIFF ALICIA
                                         ) G. SKINNER'S FIRST AMENDED
14 MOUNTAIN LION ACQUISITIONS, INC., a   ) COMPLAINT BY DEFENDANTS
   California corporation; JUDITH EAST,  ) MOUNTAIN LION ACQUISITIONS, INC.;
15 individually and in her individual capacity; D. ) D. SCOTT CARRUTHERS, A
   SCOTT CARRUTHERS, A PROFESSIONAL      ) PROFESSIONAL LAW CORPORATION;
16 LAW CORPORATION, a California corporation; ) DENNIS SCOTT CARRUTHERS; AND
   and DENNIS SCOTT CARRUTHERS,          ) JUDITH EAST
17 individually and in his official capacity, )
                                         ) Date:     Wed., May 7, 2014
18              Defendants.              ) Time:     1:00 p.m.
                                         ) Judge:    Hon. Nathaniel Cousins
19                                       ) Courtroom: A, 15th Floor, San Francisco
                                         )
20

21 TO THE HONORABLE NATHANIEL COUSINS, UNITED STATES MAGISTRATE JUDGE; TO

22 ALICIA G. SKINNER, PLAINTIFF; AND TO FRED W. SCHWINN, ESQ.; ANNA CLAIRE

23 JOHNSON, ESQ.; KARI ANNETTE RUDD, ESQ.; RAEON RODRIGO ROULSTON, ESQ.;

24 CONSUMER LAW CENTER, INC.; AND BAY AREA LEGAL AID, COUNSEL FOR PLAINTIFF:

1

PLEASE TAKE NOTICE that on Wednesday, May 7, 2014 at 1:00 p.m. or as soon thereafter as the matter may be called and heard in the above entitled court, in Courtroom A on the 15th floor of the San Francisco Courthouse, at 450 Golden Gate Avenue, San Francisco, California 94102 before the Honorable Nathaniel M. Cousins, United States Magistrate Judge, presiding, hearing shall be had on the motion for judgment on the pleadings brought by defendants Mountain Lion Acquisitions, Inc.; D. Scott Carruthers, a Professional Law Corporation; Dennis Scott Carruthers; and Judith East ("defendants").

The defendants move for judgment in their favor in this action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because the complaint itself clearly establishes that no material issues of fact exist for resolution, and defendants are entitled to judgment as a matter of law.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Civil L.R. 3-4, Civil L.R. 7-2(b)(4) and Civil L.R. 7-4(a), defendants Mountain Lion Acquisitions, Inc.; D. Scott Carruthers, a Professional Law Corporation; Dennis Scott Carruthers; and Judith East ("defendants") present the following memorandum of points and authorities in support of their motion to dismiss the First Amended Complaint of Alicia G. Skinner ("Skinner").

**1. Issues to be decided.** By order entered on January 28, 2014 (Dkt. No. 63), this Court granted in part defendants' previous motion to dismiss plaintiff Skinner's original complaint. (Dkt. No. 35, 47.) The Court held (Dkt. No. 63 at 4:5-10:9) that Skinner failed to state a claim for relief under the Fair Debt Collection Practices Act ("FDCPA"). In introducing its ruling, this Court stated (Dkt. No. 63 at 4:21-22) that "[t]he issue before the Court is whether Skinner has stated a claim under the FDCPA based on the alleged violation of § 22340 of the [California Finance Lenders Law ("CFLL"), California Financial Code § 22000, *et seq*.]." In holding that Skinner had failed by her original complaint to state a claim for relief under the FDCPA, this Court concluded as follows:

> [T]he Legislature enacted § 22340 to specifically authorize finance lenders to sell real estate backed loans to institutional investors without having to obtain a real estate broker's license. Section 22340 does not expressly prohibit any conduct. Thus, neither the plain

language of § 22340, nor its legislative history, support Skinner's interpretation that the sale of a loan not secured by real estate to someone other than an "institutional investor" violates § 22340 and constitutes a "willful violation" voiding the loan under § 22750(b). Because Skinner's FDCPA claim is based entirely on defendants' alleged violation of § 22340, Dkt. No. 1 at ¶¶ 31, 47, she has failed to state a claim for relief under the FDCPA.

Dkt. No. 63 at 9:25-10:7. The Court pointed out that Skinner had recently moved to amend her complaint (Dkt No. 63 at 10:27-28, citing Dkt. No. 60) and stated, "it is unclear whether [Skinner] intends to abandon her theory that defendants' alleged CFLL violations made their debt collection attempts a violation of the FDCPA." Dkt. No. 63 at 10:27-28. The Court then ruled, "as it is not clear to the Court that Skinner could not amend her complaint to state a claim for relief under the FDCPA, the Court will permit leave to amend.

On February 25, 2014, Skinner filed her First Amended Complaint ("FAC"). Dkt. No. 65. The FAC abandons the theory of the original complaint that defendants' alleged CFLL violations made their debt collection attempts a violation of the FDCPA. Whereas in paragraph 1 of the original complaint, Skinner stated that this was an action based on "Defendants' violations of the California Finance Lender Law, Cal. Financial Code § 22000 *et seq*." (Dkt. No. 1 at 2:2-6), Skinner has dropped that paragraph from her FAC. *See* Dkt. No. 65 at 2:2-5. Skinner retains in the FAC only the theory that defendants have allegedly violated the FDCPA. *Compare* Dkt. No. 1 at 2:7-3:5 *with* Dkt. 65 at 2:6-25.

While Skinner has not deleted from the FAC the allegations previously set forth in paragraphs 17 through 19 and 25 through 31 of the original complaint (Dkt. No. 1 at 6:20-26 and at 7:19-8:15) but has instead carried them forward as paragraphs 14 through 16, paragraphs 18 through 24, and 26 through 29 of the FAC (Dkt. No. 65 at 6:3-9, 6:13-7:10, 7:15-8:2), she has nonetheless completely removed from her FAC the claim previously alleged for purported violation of the California Finance Lender Law (previously set forth in the original complaint, Dkt. No. 1 at 13:13-15:7, as the third unnumbered claim for relief), a claim that is entirely absent from the FAC. *See* Dkt. No. 65 at 11:9-13:5. Thus, whereas previously the question presented in the prior motion to dismiss was whether it was even relevant that

defendant Mountain Lion Acquisitions, Inc. is not a "licensee," not a "finance lender," and not an "institutional investor," as alleged in the complaint, that issue has been removed from this present litigation by Skinner's having abandoned the theory.

Skinner now alleges a new claim "for violations of 15 U.S.C. §§ 1692d and 1692e, based on recently discovered information that defendants allegedly used a forged declaration in attempting to collect her debt." Dkt. No. 63 at 3:5-7. In her motion for an order granting leave to file the FAC, Skinner asserted that all defendants knowingly made and used "a forged declaration in an attempt to collect a defaulted consumer debt from Plaintiff." Dkt. No. 60-1 at 2:13-14. Skinner claims to have "discovered" that defendants "made and used a forged declaration" by virtue of testimony elicited during the deposition of Louis Ochoa. *See* Dkt. No. 60-1 at 3:20-21; 4:16-17; Dkt. No. 60-2 at 3:19-20; 3:23.

As purported evidence of the alleged repeated acts of "forgery" to collect debts in supposed violation of the FDCPA, Skinner states simply, "A true and correct copy of excerpts from Mr. Ochoa's deposition and the relevant exhibits are attached hereto and marked as Exhibit 'A.'" *See* Dkt. No. 60-2 at 3:6-7. Skinner does not specify what testimony from Mr. Ochoa constitutes evidence of "forgery."

A review of the *entirety* of the transcript of testimony of Mr. Ochoa supplied by Skinner (Dkt. No. 60-3 at 1-14) reveals only that the signatures on various pages shown to him were not exemplars of his signature. *See* Dkt. No. 60-3 at page 8 of 14 (deposition transcript page 22), line 22 through page 13 of 14 (deposition transcript page 27), line 2. "None of those would be my signature." (*Id.* at 8:25-9:1); "[T]ell me if you recognize any of them as being yours"; "Yeah, I would say no." (*Id.* at 9:11-13); "None of these signature exemplars are your signature?; A. No" (*Id.* at 9:14-16); "[N]one of the signatures contained on the documents in Exhibit 7 are your signatures; is that correct? A. That's correct." (*Id.* at 11:11-13.)

**2. Relevant Facts.** The complaint herein alleges purported violation of the federal Fair Debt Collection Practices Act ("FDCPA"). *See* First Amended Complaint ("FAC") [Doc. No. 65], at ¶¶ 52-62. Plaintiff alleges that "the Prepared Testimony in Lieu of Direct Testimony CCP 98 (Exhibit '2') was not

signed by Louis Ochoa, but that the signature purported to be Mr. Ochoa's is a forgery." *See* FAC [Doc. No. 65], at ¶ 42; *see also* ¶ 49 ("by drafting, filing with the state court, and serving a copy of the forged Prepared Testimony in Lieu of Direct Testimony CCP 98 (Exhibit '2') on Plaintiff, Defendants misrepresented the compensation which may be lawfully received by Defendants for the collection of the debt").

Contrary to plaintiff Skinner's suppositions about "forgery" and Skinner's misunderstanding of Mr. Ochoa's supposedly "relevant" deposition testimony, the fact of the matter is that Mr. Ochoa gave to defendant Mountain Lion Acquisitions, Inc. blanket, written, express permission to endorse his name upon any documents necessary to carry out the intent of the Purchase and Sale Agreement ("Agreement") entered into on July 26, 2011 by and between Mountain Lion Acquisitions, LLC ("MLA") as "buyer" and CashCall, Inc. ("CCI") as "seller," whereby CCI assigned to MLA CCI's right to act on plaintiff's loan. A true and correct copy of the Agreement is attached to the Declaration of D. Scott Carruthers ("Carruthers Decl.") served and filed concurrently herewith. Section 12.15 of the Agreement specifically states:

> Seller shall irrevocably appoint Buyer and Buyer's representatives as Seller's limited attorney-in-fact to endorse Seller's name upon (a) checks or other forms of payment received with respect to the Loans, and (b) any other notes, instruments and other documents necessary to carry out the intent of this Agreement and the transfers provided for herein. Seller shall execute and deliver to Buyer a limited power of attorney in the form of Exhibit "C" attached hereto.

*See* Carruthers Decl. at ¶ 2. That Agreement was executed by Louis A. Ochoa. *Id.* at ¶ 4.

The Exhibit "C" attached to the Agreement further provides that CCI as "Seller Corporation and its Affiliates ('Seller')" did thereby "make, constitute and appoint Mountain Lion Acquisitions, LLC ('Purchaser'), true and lawful attorney for <u>and in Seller's name</u>, place and stead, to take or cause to be taken <u>any action</u> necessary to convey to Purchaser all right, title and interest of Seller in, to and under the Loans and the related documentation, including, without limitation: [¶] (a) <u>to . . . sign . . . any . . . and all . . . documents as may from time to time be necessary or appropriate to accomplish the sales and transfers</u>

5
AMENDED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS

1 provided for the Agreement . . . [and] [¶] (c) to complete, <u>execute</u> and record <u>any . . . document</u> . . . [and]
2 [¶] (d) to exercise or perform <u>any act</u>, power or duty that Seller has or would have in connection with the
3 Loans purchased by Purchaser . . . ." *See* Exhibit "C" to Agreement (emphasis here added).

4     In short, documents which Skinner is convinced are forgeries are nothing of the sort. While
5 Skinner's counsel may well have asked Mr. Ochoa whether the signature exemplars shown to him
6 constituted photocopies of his signature and while counsel may have received a negative response to those
7 inquiries, counsel did not proffer any question that would elicit a response one way or the other as to
8 whether Mr. Ochoa had ever given to anyone authority to sign his name on his behalf.

9     **3. <u>Argument</u>.** Whenever an agent signs under his authority to endorse an instrument, no forgery
10 exists. *Duden v. United States*, 199 Ct. Cl. 668, 467 F.2d 924 (1972). A principal may give his agent
11 express authority by express form of communication. Restatement (Second) of Agency § 7 (1958). An
12 agent has implied authority to perform those acts necessary for him to exercise his expressed authority. *Id.*
13 at 35; *see Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 692, 93 L. Ed. 1628, 69 S. Ct.
14 1457 (1949). Apparent authority differs from express authority because it does not result from the
15 principal's actual grant of authority. Instead, apparent authority is that which, "the principal permits the
16 agent to exercise or which he holds [the agent] out as possessing." S. Williston, A Treatise on the Law of
17 Contracts §§ 277, n.11. (W. Jaeger 3d ed. 1959 and 1982 Supp.); *see* Restatement (Second) of Agency § 8
18 (1958). A principal whose actions have given a third party reasonable grounds for assuming that an agent
19 has certain authority is estopped from pleading the agent's lack of authority. *Schimmelpennich v. Bayard*,
20 26 U.S. (1 Pet.) 264, 290, 7 L. Ed. 138 (1828); *see Bronson's Executor v. Chappell*, 79 U.S. (12 Wall.)
21 681, 683, 20 L. Ed. 436 (1870); *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 665 (2d Cir. 1964).

22     In *Gilbert v. United States*, 291 F.2d 586 (9th Cir. 1961), *rev'd on other grounds*, 370 U.S. 650, 8
23 L. Ed. 2d 750, 82 S. Ct. 1399 (1962), the United States Court of Appeals for the Ninth Circuit held that an
24 accountant's express authority, pursuant to a written power of attorney, to file his client's federal tax return

and to receive refunds, did not bestow upon him authority to endorse the checks. The clear import of the *Gilbert* decision, therefore, is that the plaintiff's use of her law firm's address on the estate tax return could not be viewed as giving the law firm endorsement authority. Here, of course, the express authority granted to the defendants included the power to endorse Mr. Ochoa's very name on all documents.

In addition, in *Gilbert*, the Treasury Regulations in effect when the plaintiff filed the estate return described the authority a client could delegate pursuant to a power of attorney. Among the options listed were: "receipt (but not endorsement and collection) of a check in payment of any refund of Internal Revenue taxes, penalties or interest." 26 C.F.R. § 601.502(c)(1)(i)(1974). Indeed, a special power-of-attorney form had to be executed in order to allow an agent to endorse a refund check. *Id.* Thus, the Treasury Department itself required a special and separate form for endorsement authority, as opposed to the mere authority to receive a tax refund check. Here, of course, Mr. Ochoa and defendants entered into an agreement whereby Mr. Ochoa delegated to defendant, through a power of attorney, power to execute documents in Mr. Ochoa's name.

Indeed, speaking of forms, here the Agreement and its Exhibit "C" attached to the Declaration of D. Scott Carruthers filed and served concurrently herewith constitutes an exemplar of the exact same Sale and Purchase Agreement and Power of Attorney that was executed by Mr. Ochoa in connection with each and every transaction between MLA and CCI. *See* Carruthers Decl. at ¶ 3. In fact, it was CCI who prepared the Agreement for use in every one of CCI's sales, including MLA sales. Carruthers Decl. at ¶ 4. And further, the declaration MLA used to obtain judgments was prepared by CCI and given to MLA by CCI in the year 2011 for MLA to use as a template. *See* Carruthers Decl. at ¶ 4. Indeed, with each and every purchase and sale between CCI and MLA, CCI gave to MLA both the promissory note and a detailed payment history, all warranted by CCI as Seller to be accurate. *See* Section 7.10 of the Agreement attached to the Carruthers declaration; *see also* Section 12.15, which irrevocably allows MLA to endorse Ochoa's name.

Additionally, the limited Power of Attorney confers broad powers. Mr. Carruthers testifies that CCI authorized MLA to obtain judgments in the manner described above; not once in dozens of meetings between CCI and MLA was any question raised about MLA endorsing Mr. Ochoa's name on documents notwithstanding CCI knew MLA was obtaining judgments in this manner and CCI and MLA talked about it at length. *See* Carruthers Decl. at ¶ 5.

**4. Standard on a Motion to Dismiss.** Defendants move for judgment on the pleadings pursuant to Rule 12(c). Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, all material allegations in the complaint are taken as true and construed in the light most favorable to the non-movant. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). A court may grant a motion for judgment on the pleadings when the movant clearly establishes that no material issues of fact remain to be resolved, and it is entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

## CONCLUSION

Wherefore, defendants respectfully request that the court grant the motion to for judgment on the pleadings and grant to defendants judgment in this case and dismiss with prejudice the federal Fair Debt Collection Practices Act claim, the only claim upon which plaintiff proceeds.

Dated: March 20, 2014                                  Respectfully submitted,


                                          /s/ D. Scott Carruthers
                                       D. Scott Carruthers
                                       Attorney for Defendants Mountain Lion Acquisitions, Inc.; D. Scott Carruthers, a Professional Law Corporation; Dennis Scott Carruthers; and Judith East